UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 0: 17-CR-00324-DSD-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ellis Alance Banks, | |
| Defendant. | |

Michelle E. Jones, United States Attorney's Office, counsel for the government

Lisa M. Lopez, Office of the Federal Defender, counsel for Mr. Banks

This matter is before the Court on two pretrial motions filed by defendant Ellis Alance Banks. In his Motion to Suppress Statements, Admissions and Answers, Mr. Banks challenges the statements taken during an April 1, 2015 interview. ECF No. 25. Specifically, he argues that he was functionally in custody during an interrogation, but was unlawfully questioned without proper *Miranda* warnings. In his Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure, Mr. Banks challenges the search of his home and vehicles, on the grounds that law enforcement lacked probable cause. ECF No. 26. For the following reasons, the Court recommends denying both of Mr. Banks's motions.

## I.   The Statements

On April 1, 2015, around 9:00 a.m., IRS Special Agent Marissa Pitzen and approximately nine other IRS agents, an IRS staff member, and two Hennepin County Sheriff's Deputies executed a search warrant related to Mr. Banks. Mot. Hrg. Tr. ("Tr.") at 11–14. The address searched, on Xerxes Avenue in Minneapolis, was a residence belonging in part to Mr. Banks. *Id.* at 13. The search was part of an investigation into the filing of fraudulent tax returns. *Id.*; *see generally* Gov't Ex. 1 at 3.

When the agents arrived at the house, they knocked and announced their presence and their possession of a search warrant. Tr. at 14. Two people were in the home at the time, including Mr. Banks's son Isaiah, and they admitted the agents into the home. Id. The sheriff's deputies then left the scene. Id. at 18.

Mr. Banks was not home, so Agent Pitzen called him around 9:30 a.m. Id. at 15. Agent Pitzen informed him that she "was at his residence executing a search warrant, and [] asked if he would be able to come to the residence to talk." Id. at 18. Mr. Banks said he would call her back, but did not. Id. A little while later, one of Mr. Banks's other sons, Rafael, came to the home at Mr. Banks's request. Id. at 20. Rafael called Mr. Banks after speaking with Agent Pitzen, and Mr. Banks conveyed concern that he would be arrested if he came to the home. Id. at 20–21. Agent Pitzen told Mr. Banks through Rafael that agents did not have an arrest warrant and did not intend to arrest him that day. Id. at 21.

Around 11:00 a.m., Mr. Banks arrived. Id. "He was very angry and he was shouting," and he "wanted to know who turned him in." Id. at 22. Agent Pitzen "explained to him that [agents] were conducting a search warrant, that he was not under arrest, that he was free to leave, but that [she] would like to talk to him." Id. Mr. Banks "calmed down shortly after that," and Agent Pitzen read him a "noncustody statement of rights" regarding his right to counsel and his right against self-incrimination. Id. at 23–24; see also Gov't Ex. 3. Mr. Banks indicated that he understood the rights as they were read and continued to speak with Agent Pitzen. Tr. at 25.

Agent Pitzen and her colleague Special Agent Bona sat next to each other on the couch in Mr. Banks's living room while Mr. Banks sat on the end of the couch closest to the door. Id. at 25–28. Mr. Banks was tearful while he explained his recent struggles and attempts at self-improvement. Id. at 28–29. He also "mentioned filing false tax returns" and expressed remorse. Id. During the conversation, other agents continued to search the home. Id. at 31. Because the room in which Mr. Banks, Agent Pitzen, and Agent Bona were talking led to the front door, agents came in and out of the room during the conversation. Id. at 31–32.

Agent Pitzen did not make any commitments or promises or use any tricks or deception "[b]ecause Mr. Banks was fairly forthcoming and [the] conversation was fairly cordial and [she] didn't feel like [she] needed to do that." Id. at 32. Other than

Mr. Banks's yelling on his initial arrival at the home, the conversation involved no raised voices. *Id.* at 33. Agent Pitzen's gun was likely visible on her hip belt. *Id.* at 48.

Agent Pitzen did not recall Mr. Banks ever asking to leave the room or the home, and he never asked for an attorney. *Id.* at 33. The front door was unlocked, and Agent Pitzen testified that Mr. Banks would have been permitted to leave had he so desired. *Id.* Agent Pitzen told Mr. Banks that he was free to leave "on multiple occasions." *Id.* at 34. Mr. Banks was never placed in handcuffs, nor was he arrested at the end of the encounter. *Id.* at 34–35.

**Analysis**

A defendant's statements to law enforcement in the context of a custodial interrogation are inadmissible unless law enforcement officials inform the defendant of his right to remain silent and to counsel. *Miranda v. Arizona*, 384 U.S. 436, 467–70 (1966). The parties here disagree as to whether Mr. Banks was in custody for *Miranda* purposes. To answer this question, the Court examines the totality of the circumstances and considers whether a reasonable person in the defendant's position would feel free to terminate the encounter and leave. *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014). Six factors aid the Court in its analysis:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;
> (2) whether the suspect possessed unrestrained freedom of movement during questioning;
> (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;
> (4) whether strong arm tactics or deceptive stratagems were employed during questioning;
> (5) whether the atmosphere of the questioning was police dominated; or,
> (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). The first three factors weigh against a finding of custody and the latter three support it. *Id.* This Court need

not find that all factors point in a particular direction, but should balance all of these considerations in assessing custody.  Here the relevant facts strongly support a finding that Mr. Banks was not in custody.  *Id.*

The Court will first consider the mitigating *Griffin* factors.  Mr. Banks did not initiate contact with authorities, but accepted Agent Pitzen's invitation to return home and speak with her while agents executed the search warrant.  Before he arrived, on his arrival, and during the conversation, Agent Pitzen informed Mr. Banks that they did not intend to arrest him that day and that he was free to leave.  Mr. Banks argues that his movement was restrained because "he was stopped before he could fully enter his house," though the record does not contain any evidence that Mr. Banks would not have been permitted either to continue into the house or to leave altogether. Mem. in Supp. at 6.  While it may to be true that he did not have full freedom of movement in the house, that was because the warrant was being executed, not because he was in custody.  Admittedly, Mr. Banks did not ever try to leave the room or the home during his conversation with Agent Pitzen, but the record supports Agent Pitzen's testimony that he would have been allowed to do so.  *See United States v. Ollie*, 442 F.3d 1135, 1138 (8th Cir. 2006) (declining to reach a conclusion on the second *Griffin* factor where the defendant "never tried to move about or leave the interview room").  Though the second *Griffin* factor is somewhat inconclusive because Mr. Banks never tested any limitations on his movement, the first and third elements weigh strongly against a finding of custody for *Miranda* purposes.

The aggravating factors similarly undermine a finding of custody.  Agent Pitzen testified that she and Agent Bona did not use strong arm or deceptive tactics in questioning Mr. Banks, and Mr. Banks does not allege otherwise.  Moreover, Mr. Banks was not placed under arrest at the conclusion of the questioning.  Whether the atmosphere was police-dominated is a closer call, but still weighs against a finding of custody.  Mr. Banks was in his own home, but there were about ten IRS agents present searching the house.  The agents wore vests that said police in bright lettering, and at least one had a visible gun.  Tr. at 45–47.  However, in this context, the Court's inquiry focuses on whether the questioning itself was police dominated, not the execution of the search warrant.  *See United States v. Williams*, 760 F.3d 811, 815 (8th Cir. 2014) (holding that despite the inherently police-dominated nature of the execution of a search warrant, questioning in a defendant's home during that search did not amount to a custodial interrogation).  Both Agent Pitzen and Agent Bona sat

on the couch with Mr. Banks during the questioning, though they did not sit on either side of him and he sat closest to the door.

In *United States v. Williams*, the Eighth Circuit found an interview in very similar circumstances to be noncustodial. 760 F.3d at 814–15. There, the defendant arrived at his home during the execution of a search warrant, he was told he was not under arrest and that the decision to speak with officers was voluntary, and he chose to speak with them. *Id.* at 813. The interview took place in his living room, not far from the front door. *Id.* The interviewing agent "did not raise his voice, make any threats or promises, or use deception." *Id.* The defendant was not restrained during the conversation and was told he was free to go to the bathroom or get a drink of water if he liked. *Id.* at 813–14. At the end of the interview, he was not arrested. *Id.* at 814. Based on these facts, the Eighth Circuit concluded that the interview was noncustodial. The court noted that even during execution of a search warrant, "a reasonable resident who is unrestrained near the front door in the living room of his home, and who is advised that there is no arrest and that participation in any interview is voluntary, should know that he is free to leave or to terminate questioning." *Id.* at 815. It is difficult to discern any basis on which the reasoning and holding from *Williams* can be distinguished from the present case.

In sum, this Court's analysis of the *Griffin* factors supports a finding that Mr. Banks was not in custody for Miranda purposes during his interview. Therefore, Agent Pitzen's use of a lesser "non-custodial" advice of rights was not a constitutional violation. The Court recommends that Mr. Banks's motion to suppress statements be denied.

## II.   The Search

Mr. Banks challenges the warrant underlying the April 1, 2015 search. Mot. to Suppress Fruits of Unlawful Arrest & Search & Seizure. He raises a four-corners challenge, asserting that the warrant did not establish probable cause. *See id.*

### Analysis

"A magistrate judge may issue a search warrant upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place." *United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016). A judge must make a "'common-sense decision,'" given the totality of the circumstances reflected in the

affidavit, "as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983)). A reviewing court must determine whether "there was at least a substantial basis for the magistrate's finding of probable cause." *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000). The "issuing court's 'determination of probable cause should be paid great deference by reviewing courts.'" *United States v. Taylor*, 15-CR-00091 (JNE/LIB), 2015 WL 4992443, at *4 (D. Minn. Aug. 20, 2015) (quoting *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331).

The warrant at issue here authorized a search of "the premises, including the residence, garage, out-buildings, and vehicles" located at Mr. Banks's address. Gov't Ex. 1 at 1. In the affidavit in support, Agent Pitzen indicated that she expected to find evidence of "False, Fictitious or Fraudulent Claims" and "Conspiracy to Defraud the Government with Respect to Claims" at that location. *Id.* at 4. A warrant attachment listed the items to be seized, which included *inter alia* federal and state income tax returns, documents related to preparation and payment of such returns, documents containing identifying information of other participants in the alleged scheme, bank documents, and computers used in the creation of the above documents. *Id.* at 15–16.

According to the supporting affidavit, Mr. Banks pleaded guilty in 2009 to filing a false federal income tax return. *Id.* at 5. In 2014, Agent Pitzen received information from the state department of revenue that suggested that Mr. Banks helped someone prepare a return that year. *Id.* at 4–5. Using the information from that individual, the IRS looked for similar claims and identified 42 suspicious claims filed between January 24, 2014 and May 5, 2014 for the 2013 tax year. *Id.* at 5. All of those claims were filed electronically from the same Internet Protocol ("IP") address. *Id.* at 6. Searches for similar information revealed 11 claims filed for the 2012 tax year and 31 claims for the 2014 tax year. *Id.*

The IRS identified sixteen claims filed in January and February of 2015 that were filed from the same two IP addresses, both of which were assigned to Mr. Banks's residence. *Id.* at 7. Additional similar claims were filed from IP addresses belonging to the state. *Id.* Several individuals to whose bank accounts the tax-return funds were directed appeared to be connected to Mr. Banks. *Id.* at 7–9.

Based on these facts, this Court agrees with the magistrate judge's assessment that evidence of filing false tax returns would likely be found in the home associated with the IP addresses from which suspicious returns were filed. Further, because similar claims had been fairly recently filed from different locations, there was a substantial basis on which to conclude that evidence of false claims might also be found in the vehicles associated with Mr. Banks. The totality of the circumstances readily supports the issuance of the warrant, especially when considered through the deferential lens of this Court's review. As a result, Mr. Banks's motion to suppress the fruits of the search contemplated by the warrant should be denied.

Though the Court does not find the probable cause question to be a close one in this case, even if probable cause did not exist to support the challenged warrants, Mr. Banks's motion to suppress should still be denied under the *Leon* good-faith exception. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984). The good-faith exception asks whether it was "'objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant.'" *Taylor*, 2015 WL 4992443, at *10 (quoting *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007). Mr. Banks does not allege that the warrant applications included false statements or that the "issuing judge wholly abandoned his judicial role in issuing the warrant." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (quotation omitted). And it is beyond question that the warrant was based on sufficient indicia of probable cause that an officer's belief that the warrant was valid was not "entirely unreasonable." *Id.* (quotation omitted). The Court readily concludes that the warrant was not "so facially deficient that no police officer could reasonably presume the warrant to be valid." *Id.* (quotation omitted). For these reasons, the *Leon* good-faith exception further requires denial of the motion.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Mr. Banks Motion to Suppress Statements, Admissions and Answers, ECF No. 25, be **DENIED**; and

2. Mr. Banks Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure, ECF No. 26, be **DENIED**.

Date: April 24, 2018                              *s/ Katherine Menendez*
                                                  Katherine Menendez
                                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.